IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 21-03022 (ESL) |
| CLARISEL FELICIANO TRINIDAD | CHAPTER 13 |
| Debtor | |
| CLARISEL FELICIANO TRINIDAD | |
| Plaintiff | |
| vs. | ADV. PROC. 22-00002 |
| EMPRESAS BERRIOS, INC. | |
| Defendant | |

OPINION AND ORDER

The instant adversary proceeding is before the court upon the motion to dismiss, as amended, filed by the defendant Empresas Berrios, Inc. ("Berrios") (dkt. #s 18, 19, 35), the oppositions by Clarisel Feliciano Trinidad ("debtor" or "plaintiff") (dkt. #s 24, 42) to the motion to dismiss, plaintiff's motion for leave to file an amended complaint (dkt. #27), and Berrios' opposition to plaintiff's request to amend complaint (dkt. #36).

The case came before the court on June 17, 2022, for a preliminary pretrial on the complaint filed by the debtor/plaintiff on January 19, 2022, alleging that actions by defendant Berrios to collect a debt discharged in a prior bankruptcy case constituted a violation of the discharge injunction pursuant to 11 U.S.C. § 524. The parties were granted fourteen (14) days to file a settlement agreement and, if no agreement was reached, then the pending matters referred to above would be deemed submitted. See minutes at dkt. #40. The parties have not reached an agreement. Thus, the court proceeds to address defendant's motion to dismiss and plaintiff's motion for leave to amend the complaint.

BACKGROUND

Defendant Berrios moved to dismiss the complaint on March 28, 2022 (dkt. #s 18 and 19), and amended the request for dismissal on June 1, 2022 (dkt. #35).  On May 11, 2022, plaintiff filed an opposition to the motion to dismiss (dkt. #24), and on May 12, 2022, filed an amended motion for leave to file an amended complaint to add a class action pursuant to Fed. R. Civ. P. 23 (dkt. #27).  On June 9, 2022, Berrios filed an opposition to the motion for leave to amend the complaint (dkt. #36).

There are two matters pending before the court, the motion to dismiss, as amended, filed by Berrios and plaintiff's motion to amend the complaint.  Plaintiff has not yet filed an opposition to the amended motion to dismiss (dkt. #35).  Berrios filed an opposition to the motion for leave to file amended complaint (dkt. #36).

DISCUSSION

The Debtor's Complaint contends that Berrios violated the discharge obtained by the Debtor in a prior bankruptcy case (15-07024) by: (1) filing proof of claim no. 1 in posterior bankruptcy case no. 16-06191 (Dismissed in August 2017) and proof of claim no. 5 in case no. 21-03022, to which this adversary relates; and (2) by continuing to report the discharged debt in the Debtor's credit report.

On March 28, 2022, Berrios filed its Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted (Docket No. 18). The Creditor states that 11 U.S.C. §524(a)(2) does not create a private right of action and violation of the discharge injunction should be enforced through contempt proceedings under 11 U.S.C. §105. The creditor further argues that the First Circuit has held that a bankruptcy court is only authorized to invoke §105 with regard to §524 if the "merits so require". Berrios states that the proper procedure for addressing a discharged claim being filed in the second or third bankruptcy case is by filing a motion for contempt. Furthermore, Berrios argues that, by inadvertence, an employee refiled a proof of claim of previous discharged debt in this new plaintiff's bankruptcy case, and that its actions were not intentional or willing, as those

were the guidelines that had been established upon advice from former legal counsel. The creditor states that plaintiff's counsel had offered a significant sum of money for any inconvenience triggered by the refilling of the proof of claim but that the offer had been rejected by the plaintiff. Lastly, the creditor argues that any allegations under the Fair Credit Reporting Act ("FCRA") are meritless, considering that claims under the act require proof that a consumer has affirmatively disputed inaccurate information reported in the consumer credit history report, and Berrios did not receive notice of a dispute from a consumer credit reporting agency.

The Plaintiff replied to the Defendant's Motion to Dismiss (Docket No. 24). The Plaintiff states that this court, in Hotel Airport, Inc. v. Best W. Int'l Inc. (In re Hotel Airport, Inc.), Nos. 11-06620 (ESL), 13-00259 (ESL), 2014 Bankr. LEXIS 3990 (Bankr. D.P.R. Sep. 18, 2014), rejected that Plaintiffs seeking redress under §105 and §524 should proceed through a contested motion rather than an adversary proceeding. Additionally, as to the alleged FCRA claim, the Plaintiff states that it has not made a claim pursuant to the Act, and her allegations are based entirely on the violation of the discharge order.

On May 11, 2022, the Plaintiff requested leave to file an Amended Complaint (Docket No. 27), alleging that the creditor's conduct constitutes a pattern and that its "practice of continuing to collect discharged debts is part of its business model to maximize recovery, payments and profits on such debts" and that the "Defendant has implemented guidelines that require its employees to continue to collect discharged debts." Therefore, the amended complaint attempts to represent a "class" allegedly affected by the Creditor's practices.

On June 1, 2022, Berrios filed an Amended Motion to Dismiss (Docket No. 35) arguing that, for jurisdictional reasons, the debtor must bring an allegation of violation of the discharge order in the same case that the discharge order was entered. Berrios argues that, although it was not able to find any case law specifically stating the requirement, the court has no jurisdiction in this bankruptcy case to adjudicate an alleged violation of a discharge order that was entered in a prior bankruptcy case and that this adversary proceeding could not be considered a core proceeding pursuant to 28 USC §157(b)(2).

RELEVANT MATERIAL AND UNCONTESTED FACTS

1.      The Debtor has filed for bankruptcy protection five (5) times including the instant case. The prior case numbers are the following: 15-04124 (BKT); 15-07024 (BKT); 16-06191 (BKT); 18-03931 (ESL) and the instant case 21-03022 (ESL).

2.      The Debtor obtained a discharge order in the chapter 7 case #15-07024 on June 30, 2016 (Docket No. 55).

3.      Empresas Berrios, Inc. filed proof of claim #1 in case #16-06191. The same was objected to and Berrios withdrew the claim (Docket Nos. 14 & 15). In case #18-03931, Berrios filed proof of claim #2 and withdrew the same (Docket #28). In the instant case, Berrios filed proof of claim #5 on December 9, 2021. The Debtor objected said claim on December 21, 2021 (Docket #29) and the objection was granted on January 24, 2022 (Docket No. 39).

4.      The Debtor, in bankruptcy petitions #16-06191, 18-03931 and 21-03022, did not include Empresas Berrios as a creditor in its schedules.

5.      The instant adversary proceeding was filed on January 19, 2022.

JURISDICTION

This court recently had the opportunity to delve into the issue of lack of subject matter jurisdiction in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(1) in the adversary proceeding of Diaz Irizarry v. Diaz Irizarry & Betteroads Asphalt, LLC (In re Betteroads Asphalt LLC), 2021 Bankr. LEXIS 3081, at *31-38 (Bankr. D.P.R. November 8, 2021). The Court in its analysis as part of the applicable law and analysis regarding subject matter jurisdiction included the following:

> "Lack of subject matter jurisdiction may be raised at any time.  Indeed, even if the litigants do not identify a potential problem in that respect, it is the duty of the court—at any level of the proceedings—to address the issue *sua sponte* whenever it is perceived." 2 Moore's Federal Practice - Civil § 12.30 (2021); See also Fed. R. Civ. P. 12(h)(3) applicable in bankruptcy proceedings through Fed. R. Bankr. P. 7012(b); In re Recticel Foam Corp., 859 F. 2d 1000, 1002 (1st Cir. 1988) ("a court has an obligation to inquire *sua sponte* into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting"); Goldsmith v. Massad (In re Fiorillo), 494 B.R. 119, 142 (Bankr. D. Mass. 2013) (bankruptcy courts are

-4-

"obligated to determine whether and to what extent [they] have jurisdiction to hear and determine all counts of the complaints"); Feliciano v. Dubois, 846 F. Supp. 1033, 1041 (D. Mass. 1994) ("a court always had an obligation to consider, even on its own initiative as well as on motion of an opposing party, whether it has subject matter jurisdiction").

The jurisdiction of the bankruptcy courts is grounded in, and limited by, statute. See Celotex Corp. v. Edwards, 514 U.S. 300, 307, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995). "Subsections 1334(a), (b) and (e) of title 28, United States Code, establish the jurisdiction of the federal district courts over title 11 cases, over civil proceedings that take place under the umbrella of a title 11 case and over property of the title 11 estate, respectively." Alan N. Resnik & Henry J. Sommer, 1 Collier on Bankruptcy, ¶3.01[1] (16th ed. 2021). 28 U.S.C. §1334, provides that the district courts have jurisdiction over two main categories of bankruptcy matters, namely; "cases under title 11," over which the district court has original and exclusive jurisdiction and "proceedings arising under title 11, or arising in or related to cases under title 11," over which the district court has original, but not exclusive jurisdiction. 28 U.S.C. §1334(a) & (b). See Middlesex Power Equip. & Marine v. Town of Tyngsborough, Mass. (In re Middlesex Power Equip. & Marine, Inc.), 292 F. 3d 61, 66 (1st Cir. 2002); Gupta v. Quincy Med. Ctr., 858 F. 3d 657, 661 (1st Cir. 2017). "'Cases'" under title 11 are to be distinguished from civil proceedings arising under title 11 or civil proceedings related to or arising in title 11 cases. The introductory phrase of section 1334(a), 'Except as provided in subsection (b) of this section', introduces the concept that the jurisdiction of the district courts over title 11 'cases' is original and exclusive, while the jurisdiction over civil proceedings arising under title 11, or arising in title 11 cases, or related to those cases, is original but not exclusive." Alan N. Resnik & Henry J. Sommer, 1 Collier on Bankruptcy, ¶3.01[2] (16th ed. 2021).

28 U.S.C. §157(a) provides that, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." "This broad jurisdictional grant allows the bankruptcy courts to 'deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" Celotex Corp. v. Edwards, 514 U.S. at 308 (citing Pacor, Inc. v. Higgins, 743 F. 2d 984, 994 (3rd Cir. 1984)). The demarcations between these types of proceedings are not always easy to distinguish from each other. See In re Middlesex Power Equip. & Marine, Inc., 292 F. 3d at 68 ("[t]he dividing line is unclear between proceedings that 'arise under' as opposed to 'arise in' and as opposed to 'related to" title 11. The statute itself provides no definitions."). See also; Wood v. Wood (In re Wood), 825 F. 2d 90, 96 (5th Cir. 1987); Tamko Roofing Prods., Inc. v. Ideal Roofing Co., 282 F. 3d 23, 32 (1st Cir. 2002). "Section 157 also divides bankruptcy proceedings into two further categories: "core" and "non-core." Stern

-5-

v. Marshall, 564 U.S. 462, 473-76, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011). These categories determine '[t]he manner in which a bankruptcy judge may act on a referred matter." Id. at 473. Proceedings 'arising under title 11, or arising in a case under title 11,' are both considered 'core proceedings' in which the bankruptcy court may enter final orders and judgments. Id. at 474 (citing 28 U.S.C. § 157(b)). Proceedings merely 'related to' a case under title 11 are considered 'non-core' proceedings. Stern, 564 U.S. at 477 (citing Collier on Bankruptcy ¶ 3.02[2], p. 3-26, n.5 (16th ed. 2010) ('The terms 'non-core' and 'related' are synonymous.'). Although whether a bankruptcy proceeding is a core proceeding is analytically separate from whether there is jurisdiction, 'by definition all core proceedings are within the bankruptcy court's jurisdiction.' Continental Nat'l Bank v. Sanchez (In re Toledo), 170 F.3d 1340, 1345 n.6 (11th Cir. 1999) (citing 28 U.S.C. §§ 157(b)(1), 1334(b))." Gupta v. Quincy Med. Ctr., 858 F. 3d. at 662, fn 5; See also, Roy v. Canadian Pac. Ry. Co. (In re Lac-Mégantic Train Derailment Litig.), 999 F.3d 72, 79, fn. 4 (1st Cir. 2021).

Bankruptcy proceedings "arising under" title 11 are those in which the Bankruptcy Code itself creates a statutory cause of action. Gupta v. Quincy Med. Ctr., 858 F. 3d at 662 (citing Stoe v. Flaherty, 436 F. 3d 209, 217 (3rd Cir. 2006)(noting that 'arising under' jurisdiction is limited to proceedings where "the Bankruptcy Code creates the cause of action or provides the substantive right invoked"); In re Wood, 825 F. 2d at 96 ("Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11.")). "Courts have held that civil proceedings "arising under title 11" include causes of action to recover fraudulent transfers, avoidance actions brought under section 544(b) of the Bankruptcy Code, actions to recover postpetition transfers under section 549 and actions against general partners under section 723." Alan N. Resnik & Henry J. Sommer, 1 Collier on Bankruptcy, ¶3.01[3][e][i] (16th ed. 2021). Other civil proceedings that arise particularly under title 11 and are classified as administrative matters or contested matters under Fed. R. Bankr. P. 9014 include the following controversies: "...whether to appoint or elect a trustee under chapter 11, motions to obtain financing with priority over existing liens, confirmation of a plan under chapters 9, 11, 12 or 13, sales free and clear of liens, complaints objecting to the discharge of a debtor and the payment of post confirmation fees to the United States trustee in chapter 11 cases." Id. at ¶3.01[3][e][i].

Proceedings "arising in" cases under title 11 are "those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68; see also; Gupta v. Quincy Med. Ctr., 858 F. 3d at 663 (citing Stoe v. Flaherty, 436 F. 3d at 218 ("[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of

a bankruptcy case."); Continental Nat'l Bank v. Sanchez (In re Toledo), 170 F.3d 1340, 1345 (11th Cir. 1999) (stating that proceedings "arising in" bankruptcy are "matters that could arise only in bankruptcy")). "There is no 'but for' test for arising in jurisdiction; that is, the fact that a matter would not have arisen had there not been a bankruptcy case does not ipso facto mean that the proceeding qualifies as an "arising in" proceeding." Id. at ¶3.01[3][e][iv].

"'Arising in' acts as the residual category of civil proceedings, and includes such things as administrative matters, "orders to turn over property of the estate" and "determinations of the validity, extent, or priority of liens." 'Arising in' proceedings might also include contempt matters, motions to appoint an additional committee under section 1102, and motions to appoint or elect trustees or appoint examiners under section 1104.  An action to recover a postpetition account 'arises in the bankruptcy case,' as does an action challenging certain activities connected with an auction of estate property, and an action for legal malpractice that arose postpetition, even one that belongs to the debtor and not to the estate." Id. at ¶3.01[3][e][iv].

"This category is also illustrated by such things as allowance and disallowance of claims, orders in respect of obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans and like matters. In none of these instances is there a "cause of action" created by statute, nor could any of the matters illustrated have been the subject of a lawsuit absent the filing of a bankruptcy case." Id. at ¶3.01[3][e][iv].

"By far the largest number of reported cases dealing with bankruptcy jurisdiction over civil proceedings are concerned with whether a particular proceeding is "related to" a title 11 case. These cases are of two kinds. The first concerns whether, at one extreme, although a particular civil proceeding is definitely within bankruptcy jurisdiction, it is "core" or "related"; the second concerns whether, at the other extreme, a civil proceeding is "related" or is not within the bankruptcy jurisdiction granted by section 1334(b) at all." Id. at ¶3.01[3][e][ii].

Irizarry v. Irizarry (In re Betteroads Asphalt, LLC), 2021 Bankr. LEXIS 3081, at *31-38 (Bankr. D.P.R. Nov. 8, 2021)

In the instant adversary proceeding the Plaintiff's claims must "arise under," "arise in," or "relate to" a cause under title 11 to fall within section 1334's jurisdictional scope. The court finds that violations of a discharge order are claims that "arise under" title 11 and fall under the bankruptcy court's jurisdiction, regardless of whether they are filed in the case in which the discharge order was entered or in a subsequent case filed by the same debtor where one of the

-7-

alleged discharge violations occurred (the filing of a proof of claim of a discharged debt). "Moreover, as a violation of the Discharge Order constitutes a violation of an order of the Court, the Court has the jurisdiction and ability to enforce its own orders. In re Nicholas, 457 B.R. at 215 (stating that enforcement of a debtor's discharge is a core proceeding and "[b]ankruptcy courts retain jurisdiction to enforce and interpret their own orders." (quoting In re Millenium Seacarriers, Inc., 419 F.3d 83, 97 (2d Cir. 2005))). In re Szenes, 515 B.R. 1, 6-7 (Bankr. E.D.N.Y. 2014); See also; In re Nat'l Gypsum Co., 118 F.3d 1056, 1064 (5th Cir. 1997) ("[A] proceeding to enforce or construe a bankruptcy court's section 524(a) discharge injunction ...necessarily arises under title 11...").

The 11th Circuit in Green Point Credit, LLC v. McLean (In re McLean), 794 F.3d 1313, 1322-23 (11th Cir. 2015), addressed the issue of jurisdiction, when violation of a discharge is alleged in a subsequent case, for filing a proof claim for a discharged debt in the latest bankruptcy case. The Appellate Court reasoned that it had jurisdiction based upon the following:

"We resolve our concern by recognizing that the purpose of a court's contempt power is in part to "ensur[e] that the Judiciary has a means to vindicate its own authority," not simply to enforce rulings in individual proceedings. Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 796, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987). The violation of an injunction is a contempt against an entire court insofar as it flouts the court's basic authority to preserve order and administer justice. See id. at 798; Alderwoods Grp., 682 F.3d at 969-71. Accordingly, any court—bankruptcy court included — has inherent powers to punish contempt against it, as a means of protecting itself as an institution. See Jove Eng'g, Inc. v. Internal Revenue Serv., 92 F.3d 1539, 1553 (11th Cir. 1996).

In this case we need not rely on the bankruptcy court's inherent powers to find jurisdiction because bankruptcy courts also possess a statutory contempt power. See id. at 1554 (acknowledging the Supreme Court's warning that inherent powers should be used sparingly, particularly when an alternate basis for sanctions is available). Congress has empowered bankruptcy courts broadly to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, 11 U.S.C. § 105(a), including sanctions to enforce the discharge injunction. Hardy v. United States ex rel. Internal Revenue Serv. (In re Hardy), 97 F.3d 1384, 1390 (11th Cir. 1996). Consequently, we hold that the court that "alone possesse[d] the power to enforce compliance with" the

discharge injunction here was the United States Bankruptcy Court for the Middle District of Alabama, irrespective of the case number of, or the judge who might have presided over, the prior proceeding. See Alderwoods Grp., 682 F.3d at 970. The bankruptcy court therefore had jurisdiction to entertain a motion for contempt in the McLeans' second bankruptcy case for a violation of the discharge injunction from their first, and we have jurisdiction to hear the appeal."

In re McLean, 794 F. 3d at 1319-20.

Therefore, this court has jurisdiction of the instant action for violation of the discharge injunction pursuant to 28 U.S.C. §1334, and venue is proper under 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A, I).

VIOLATION OF DISCHARGE INJUNCTION

This court addressed the applicable law on violations of the discharge injunction in In re Laboy, 2010 WL 427780 (Bankr. D. Puerto Rico 2010) and In re McConnie, 543 B.R. 127 (Bankr. P.R. 2017).

In Laboy the court stated:

The effect of a bankruptcy discharge is that it "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). The discharge injunction is the mechanism which allows the debtor to commence debt-free his or her fresh start. See In re Latanowich, 207 B.R. 326, 334 (Bankr.D.Mass.1997) ("The purpose of the permanent injunction set forth at § 524(a)(2) and reiterated in the discharge order is to effectuate one of the primary purposes of the Bankruptcy Code: to afford the debtor a financial fresh start ."); Green v. Welsh, 956 F.2d 30, 33 (2d Cir.19992); Baker v. Sommerville Mun. Fed. Credit Union (In re Baker ), 2006 Bankr. Lexis 3183 (Bankr.D.Mass.2006). The discharge injunction is like a permanent extension of the automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code and thus, includes all types of collection activity such as; letters, phone calls, threats of criminal proceedings or other adverse actions brought about with the purpose of debt repayment. See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[2] (15th ed.2009); Ung v. Boni (In re Boni ), 240 B.R. 381, 384 n. 5 (B.A.P. 9th Cir.1999). Moreover, "[c]reditors are obligated to maintain procedures to ensure that they do not violate section 524, and may be held liable for damages and attorney's fees if they do not." Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[b] (15th ed.2009); See In re Roush, 88 B.R. 163, 165 (Bankr.S.D.Ohio 1988); Faust v. Texaco (In re Faust ), 270 B.R. 310, 317 (Bankr.M.D.Ga.1998); In re Nassoko, 405 B.R. 515, 521 (Bankr.S.D.N.Y.2009). "Although, § 524(a) which establishes the

-9-

discharge injunction, does not include a specific provision setting out available remedies for violations of the discharge injunction, bankruptcy courts invoke § 105(a), which grants bankruptcy courts broad equitable powers, to enforce the discharge injunction, using the mechanism of civil contempt action." Parker v. Boston Univ. (In re Parker ), 334 B.R. 529, 537–538 (Bankr.D.Mass.2005); See U .S. v. Rivera Torres (In re Rivera Torres ), 309 B.R. 643,647 (B.A.P. 1st Cir.2004); In re Pratt, 324 B.R. at 5; Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 445 (1st Cir.2000), cert. denied, 532 U.S. 1048, 121 S.Ct. 2016, 149 L.Ed.2d 1018 (2001).

As to the standard to establish a violation of the discharge injunction the court held in Laboy that the standard for a willful violation of the discharge injunction under § 524(a)(2) is met if the defendant had knowledge of the discharge injunction and the same intended the actions which constituted the violation. See Fleet Mortg. Group, Inc. v. Kaneb, 196 F.3d 265, 268 (1st Cir.1999); In re Pratt, 462 F.3d at 21 (1st Cir.2006); Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[2][c] (15th ed.2009).

In McConnie this court held that:

A creditor violates the discharge injunction when it (i) has notice of the debtor's discharge; (ii) intends the actions which constitute the violation; and (iii) acts in a way that improperly coerces or harasses the debtor. In re Lumb, 401 B.R. at 6. In determining discharge injunction violations, the crucial issue is whether the creditor acted in such a way to *143 "coerce" or "harass" the debtor improperly. See Pratt v. GMAC (In re Pratt), 462 F.3d 14, 19 (1st Cir. 2006) (citing In re Diamond, 346 F.3d 224, 227 (1st Cir. 2003)). "Coercion is assessed under an objective standard, and the issue of whether a creditor acted in an objectively coercive manner is determined on the specific facts of each case." Bates v. CitiMortgage, Inc. (In re Bates), 517 B.R. 395, 398 (Bankr. D.N.H. 2014) (citing In re Pratt, 462 F.3d at 19)); See also: Quiles Aviles v. City of Philadephia Water Revenue Bureau, 532 B.R. 428, 436 (Bankr. D.P.R. 2015). "Thus, a debtor need not prove that a creditor acted in bad faith or even that the creditor created all of the circumstances in which the coercion occurred, only that the creditor's actions had a coercive effect upon the debtor (citing In re Schlichtmann, 375 B.R. 41, 95 (Bankr. D. Mass. 2007); Curtis v. Salem Five Mortgage Co., LLC (In re Curtis), 359 B.R. 356 (1st Cir. BAP 2007). However, the "debtor's subjective feeling of coercion of harassment is not enough." Bates v. CitiMortgage, Inc., 2016 U.S. App. Lexis 22215, *7 (1st Cir. 2016).

The determination is fact specific and made on a case by case basis, as the line between forceful negotiation and improper coercion is not always clear. In re Pratt, 462 F.3d at 19; In re Schlichtmann, 375 B.R. at 95" In re Lumb, 401 B.R. at 6–7. An action is considered coercive when it is "tantamount to a threat." See Jamo

v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 402 (1st Cir. 2002), or places the debtor "between a rock and a hard place." See Diamond v. Premier Capital, Inc. (In re Diamond), 346 F.3d 224, 227–228 (1st Cir. 2003). In determining whether an action is coercive, courts consider the "immediateness" of the threatened action and the context in which this action took place. In re Diamond, 346 F.3d at 227; See also: In re Bates v. Citimortgage, Inc., 2016 U.S. App. Lexis 22215, *8 ("We have no 'specific test' to determine whether a creditor's conduct meets this objective standard, but we consider the facts and circumstances of each case, including factors such as the 'immediateness of any threatened action and the context in which a statement is made' "). "....A creditor violates the discharge injunction only if it acts to collect or enforce a prepetition debt; bad acts that do not have a coercive effect on the debtor do not violate the discharge." In re Lumb, 401 B.R. at 7 citing In re Schlichtmann, 375 B.R. at 97.

Does filing a proof of claim for a discharged in a subsequent bankruptcy case constitute a violation of the discharge order pursuant to 11 U.S.C. §524(a)(2)?

In In re McLean, the Eleventh Circuit Court of Appeals held that a creditor that files a proof of claim for a discharged debt violates the discharge injunction under 11 U.S.C. §524(a)(2) if it satisfies the test that the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt, regardless of the legal entity against which the creditor files its claim. "Incorporating this language into their decisions, other circuits have identified "pressure" to repay a debt as the litmus test for whether the action affected the debtor's personal liability within the meaning of § 524(a)(2). See Solow v. Kalikow (In re Kalikow), 602 F.3d 82, 96 (2d Cir. 2010) ("[The creditors'] contact with [a third party] in no way 'pressured' [the debtor] to repay any of the [*1322] discharged debts."); Paul v. Iglehart (In re Paul), 534 F.3d 1303, 1313 (10th Cir. 2008) ("[C]onduct that facially appears permissible may still violate § 524(a)(2) if its objective effect is prohibited, i.e., [**15] if it really serves to pressure the debtor to pay a discharged debt.")

The reasoning of the McLean Court was the following:

"In reaching this conclusion, we reject Green Tree's argument that procedural protections available to debtors in bankruptcy proceedings, such as the ability to object to an unenforceable proof of claim, have any bearing on whether a violation of the discharge injunction occurred. Those procedural protections have no bearing on the question because they fail to eliminate the pressure that a debtor feels to repay a discharged debt. Bankruptcy's procedural protections did not mitigate Congress's overriding interest in eliminating doubt about the debtor's freedom from discharged debts. In this regard, any comparison between the

-11-

discharge injunction and an automatic stay is of no avail because a discharge is final: it marks the end of adjudication of claims against a bankruptcy estate. By contrast, in addition to protecting debtors from direct collection efforts, the automatic stay protects creditors and facilitates the distribution of a debtor's assets through the bankruptcy forum "by preventing a race for the debtor's assets" during the pendency of the bankruptcy proceeding. Jacks v. Wells Fargo Bank, N.A. (In re Jacks), 642 F.3d 1323, 1328 (11th Cir. 2011). Accordingly, the Bankruptcy Code's reliance on proofs of claim to facilitate distribution of the bankruptcy estate does not amount to implicit approval of the filing of a proof of claim that challenges the finality of a discharge order. See Moore v. Comenity Capital Bank (In re Moore), 521 B.R. 280, 288 (Bankr. E.D. Tenn. 2014) (distinguishing the purpose of an automatic stay from that of a discharge, emphasizing the broad language of § 524(a)(2), and noting the lack of an enumerated exception for a proof of claim).

Under this prevailing interpretation of § 524(a)(2), Green Tree's filing of a proof of claim is plainly an "act[] to collect, recover or offset [the discharged] debt as a personal liability of the [McLeans]." See 11 U.S.C. § 524(a)(2). First, the filing was an act to collect the discharged debt: we have explained that filing a proof of claim is "the first step in collecting a debt in bankruptcy and is, at the very least, an 'indirect' means of collecting a debt." Crawford, 758 F.3d at 1262 (quoting the Fair Debt Collection Practices Act). Second, the proof of claim — although indirect — was an act to recover the debt "as a personal liability" of the McLeans within the meaning of § 524(a)(2) because it triggered an increase in the McLeans' projected bankruptcy plan payments. This projected increase created the kind of pressure to which the statute is sensitive; it is irrelevant that Green Tree never actually collected the discharged debt. Given this effect of Green Tree's proof of claim on the McLeans' bankruptcy, the bankruptcy court correctly concluded that Green Tree violated the discharge injunction.
In re McLean, 794 F.3d at 1322-23.

In Moore v. Comenity Capital Bank (In re Moore), 521 B.R. 280, 288 (Bankr. E.D. Tenn. 2014) the court held that filing a proof of claim for a discharged debt can violate the discharge injunction. The Court's analysis was as follows:

"This court is troubled by the same issues that troubled the Clayton court. It, however, disagrees with that court's conclusion that the language of Section 524(a) does not encompass the act of filing a claim. To the contrary, this court reads the phrase "an act" very broadly and notes that what actions are not encompassed in the injunction are spelled out in other parts of Section 524. This court finds that the failure to exclude filing a claim in a subsequent proceeding along with other exceptions in 524 is evidence that the injunction is broad enough to cover such an act. The court agrees that filing a claim would not violate Section 362. That section

-12-

stops existing collection efforts and offers the creditors an alternative course for collection in 11 U.S.C. § 501, i.e., filing a proof of claim. However, once that permitted act is taken and the debt is discharged, any continuation of an action, use of process or any "act" to collect that same debt is prohibited by Section 524(a). If the creditor wants its debt excluded, it must avail itself of the reaffirmation procedures. If it takes an act or renews its collection efforts, it risks sanctions for its contempt of the discharge order. This court concludes that the act of filing a proof of claim for a discharged debt can violate the discharge injunction of 11 U.S.C. § 524(a). In this case, the Debtor has alleged that the debt was discharged in a prior bankruptcy, that the creditor was aware of the discharge, and that the creditor still filed a proof of claim for the discharged debt.
In re Moore, 521 B.R. 280, 288 (Bankr. E.D. Tenn. 2014).

In Clayton v. Roundup Funding, LLC (In re Clayton), 2010 Bankr. LEXIS 3596, WL 4008335 (Bankr. E.D. Wash. 2010) the bankruptcy court held that filing a proof of claim for a discharged debt did not constitute a violation of the discharge injunction because section 524(a)(2) does not include filing a claim against a bankruptcy estate and only prohibits activities outside of the bankruptcy court. The Court's analysis was the following:

"The crucial question is whether the act of filing a proof of claim violates the injunction. Roundup responds to the Claytons' claim under section 524(a) with the identical arguments that it asserted against their section 362(a) claim. The section 524(a) injunction prohibits only activities outside of the bankruptcy court. In Roundup's words, "... the Bankruptcy Code permits creditors to file claims that are disputed and unenforceable claims for any reason, because the debtors have the affirmative duty to decide which claims to present to the bankruptcy court in an objection to claim proceeding." (emphasis in original). The Court questions the scope and even the validity of this assertion. See B-Real, LLC, v. Chaussee (In re Chaussee), 399 B.R. 225, 240 (9th Cir. BAP 2008). Section 524(a) ensures that a discharge will be effective by protecting the debtor and the debtor's post discharge property from the collection of discharged debts. Post petition property, such as the debtor's earnings, could be the very property that becomes the property of the subsequent bankruptcy estate. The court is troubled by the proposition that this property loses the protection of the discharge injunction once it becomes property of a subsequent bankruptcy estate. In this regard the court emphasizes that section 524(a) provides for broad protection against not only legal proceedings, but also other acts to collect a discharged debt as a personal liability of the debtor. 4 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 524.02 [2] 16th ed. 2010. Despite these reservations, the court concludes its analysis of the Claytons' section 362(a) claim is applicable to their claim for violation of the discharge

injunction. In order for the court to find that there was a violation of the injunction, the Claytons must establish the violation of a specific court order. Like the section 362(a) injunction, the language of the section 524(a) injunction does not encompass the act of filing a claim against a bankruptcy estate. Additionally, if a creditor files a disputed and unenforceable claim, the Bankruptcy Code authorizes the debtor to object to the claim. If a creditor files a claim that abuses the judicial process, bankruptcy courts have both statutory and inherent authority to sanction the conduct. 11 U.S.C. § 105(a); In re Chaussee, 399 B.R. at 240; and Countrywide Homes Inc. v. McDermott, 426 B.R. 267, 274 (N.D. Ohio 2010). For the same reasons stated in the previous section, the court concludes Roundup did not violate the discharge injunction of section 524(a) by filing a proof of claim in Mr. Clayton's Chapter 13 bankruptcy case.

In re Clayton, 2010 Bankr. LEXIS 3596, at *13-15 (Bankr. E.D. Wash. Oct. 12, 2010); See also In re Surprise, 342 B.R. 119, 122 (Bankr. N.D.N.Y. 2006); In re Faitalia v. Vill. Park Cmty. Ass'n. (In re Faitalia), 736 Fed. Appx. 693, 695 (Bankr. 9th Cir. 2018).

Plaintiff alleges that Berrios violated the discharge injunction by engaging in credit reporting. "Extensive case law and commentary recognize that, given the importance of accurate credit reporting to consumers' access to credit (or at least consumers' widely held belief in its role), the pressure to pay debt exerted by the repeated, unexcused refusal to correct a credit report to reflect a bankruptcy discharge subjects the violator to contempt sanctions under Taggart v. Lorenzen, 139 S. Ct. 1795, 1801-02, 204 L. Ed. 2d 129 (2019)." Anderson v. Credit One Bank, N.A. (In re Anderson), Nos. 14-22147 (RDD), 15-08214 (RDD), 2022 Bankr. LEXIS 1530, at *2-3 (Bankr. S.D.N.Y. June 2, 2022). "The failure to update a credit report to show that a debt has been discharged is [ ] a violation of the discharge injunction if shown to be an attempt to collect the debt. Because debtors often feel compelled to pay debts listed in credit reports when entering into large transactions, such as a home purchase, it should not be difficult to show that the creditor, by leaving discharged debts in the credit report despite failed attempts to have the creditor update the report, is attempting to collect the debt." 4 Collier on Bankruptcy ¶ 524.02 (16th 2022)

"[A]lthough courts and commentators recognize that the refusal to correct a credit report by a reporting entity to reflect a bankruptcy discharge may be proscribed under section 524 of the

-14-

Bankruptcy Code, most courts require something more than simply showing the existence of an inaccurate report before they award sanctions. A reporting entity's systematic refusal in the face of a debtor's repeated requests to correct the report may be enough evidence of pressure to pay the debt (as the only way to get it off the report)." Anderson at *24-25.

In In re Todt, 567 B.R. 667 (Bankr. D.N.H. 2017) the court explains:

"When deciding whether the discharge injunction has been violated, courts must decide "whether conduct is improperly coercive or harassing under an objective standard—the debtor's subjective feeling of coercion or harassment is not enough." Bates, 844 F.3d at 304 (citing Lumb, 401 B.R. at 6; Pratt v. Gen. Motors Acceptance Corp. (In re Pratt), 462 F.3d 14, 19 (1st Cir. 2006)). Courts do not employ a "specific test" to determine whether a creditor's conduct meets this objective standard; rather, courts must consider "the facts and circumstances of each case, including factors such as the 'immediateness of any threatened action and the context in which a statement is made.'" Bates, 844 F.3d at 304 (quoting Diamond v. Premier Capital, Inc. (In re Diamond), 346 F.3d 224, 227 (1st Cir. 2003)). "[A] creditor violates the discharge injunction only if it acts to collect or enforce a pre-petition debt; bad acts that do not have a coercive effect on the debtor do not violate the discharge." Lumb, 401 B.R. at 7 (quoted in Bates, 844 F.3d at 304). Statements that are informational in nature, even if they include a payoff amount, generally are not actionable if they do not demand payment. Bates, 844 F.3d at 304 (citing Best, 540 B.R. at 11). In addition, letters that mention potential foreclosure after bankruptcy also are not actionable if they do not threaten any immediate action against the debtors. Bates, 844 F.3d at 304 (citing Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 402 (1st Cir. 2002)). The burden of proof is on the debtor to establish by clear and convincing evidence that the creditor violated the discharge injunction. Best, 540 B.R. at 9 (citing Manning v. CitiMortgage, Inc. (In re Manning), 505 B.R. 383, 386 (Bankr. D.N.H. 2014)); In re Zine, 521 B.R. 31, 38 (Bankr. D. Mass. 2014)."

The Todt court concluded that reporting false or outdated information to a credit agency in an attempt to coerce payment on a discharged debt can violate the discharge injunction because "…negative credit reports have consequences-like reducing creditworthiness, and with it the debtor's ability to get loans in the future—and so a false report might coerce a debtor into paying a discharged debt to avoid those consequences. . . ." However, the court clarified that the Plaintiff must provide "evidence that a creditor refused to change a false or outdated report" to be able to

infer that the creditor intended to coerce the debtor into paying the discharged debt. Referencing Bates, 844 F.3d at 306 (citing Zine, 521 B.R. at 40; Torres v. Chase Bank USA, N.A. (In re Torres), 367 B.R. 478, 486 (Bankr. S.D.N.Y. 2007)).”

In Minech v. Clearview Fed. Credit Union (In re Minech), 632 B.R. 274, 281-84 (Bankr. W.D. Pa. 2021), the debtor requested a reopening of a chapter 7 case, to hold a creditor in contempt of the discharge injunction based on an inaccurate credit report that allegedly damaged her credit score and disqualified her from receiving a loan from the Federal Housing Administration. The court concluded that the credit report was not coercive when viewed in isolation and found that the reopening of the case was unwarranted. The court reasoned as follows:

> “To violate the discharge injunction, disobedience "require[s] some affirmative collection efforts on the part of the creditor." Indeed, while applicable to "a broad array of creditor efforts to collect debts," the discharge injunction "is not [a] lifelong shield against other acts—including demands, threats, assertions of claims, and litigation—by those same creditors, even where these other acts are undertaken wrongfully and in bad faith.” The proscription targets the objective effect of the conduct ("to collect, recover or offset . . ."), meaning that even facially permissible acts may constitute de facto impermissible collection activity. To discern whether an act is one to collect a debt, courts consider whether the creditor's conduct objectively had the practical effect of improperly coercing payment of a discharged debt. The analysis is context-specific and informed by the facts of the case. Essentially, the court is looking for "evidence of an effective connection between the conduct of the creditor and the collection of the debt."
>
> Objectively, credit reporting is an unusually agnostic function. Its primary purpose is to share information relevant to making credit decisions, not modify the behavior of a debtor. In fact, credit reports are not even communicated to their subjects directly. Yet it is undeniable that the negative impact of a creditor's derogatory report can bring significant pressure to bear when discovered. And, of course, pressure naturally provokes action, so it is fair to acknowledge that credit reporting at least broadly encourages the payment of debts. But this level of influence is not inherently coercive or improper. Further complicating matters is that credit reporting is generally permitted by statute notwithstanding a bankruptcy filing.
>
> None of this is to say that credit reporting cannot violate the discharge injunction (or automatic stay). To the contrary, a substantial body of law has developed and there is universal agreement that credit reporting can constitute an

act to collect a debt. But to cast the otherwise innately ambiguous act of credit reporting as something more coercive requires evidence to objectively connect it to a collection activity. Although not required, other collection activity helps to place the credit report in context. Similarly, a refusal to change a knowingly inaccurate report may suggest that the creditor is seeking to collect a debt. Beyond these situations, "[i]t is largely a matter of the court knowing [coercion] when it smells it."

To be sure, inaccurate reports, particularly those updated post-discharge, are suspect. The Debtor cites two decisions, In re Torres and In re DiBattista, for the proposition that "courts have had no difficulty recognizing that false or outdated reporting to credit reporting agencies, even without additional collection activity, can constitute an act to extract payment of a debt in violation of section 524(a)(2)." That statement is true, but is much less meaningful than it sounds. Basically, it is simply an acknowledgment that some older cases have found that claims based solely on inaccurate credit reporting were sufficiently pled to survive a motion to dismiss. More critically, however, each of the cases cited in support of that statement applied a low "no set of facts" standard under Conley v. Gibson, which was abrogated by the heightened "plausibility" standard announced in Bell Atl. Corp. v. Twombly. In other words, those cases would likely be decided differently today. Minech v. Clearview Fed. Credit Union (In re Minech), 632 B.R. 274, 284 (Bankr. W.D. Pa. 2021)

The court notes that in Dibattista v. Selene Fin. LP (In re Dibattista), 615 B.R. 31 (S.D.N.Y. 2020), the creditor made more than 35 calls to the Debtor, in relation to the discharged debt, sent a collection letter and reported to credit agencies that DiBattista was past due on debt payments. The court concluded that the actions of the creditor indicated their intention to collect the debt. Additionally, the court clarified that the creditor "did not passively fail[ed] to update accurate information it had previously furnished. It affirmatively sent delinquency notices to the credit agencies regarding an already discharged debt, and the Bankruptcy Court found that sending that information, without the slightest diligence to ensure that the information reported was accurate, combined with the other correspondence that [ ] [the creditor] sent to DiBattista and his family, was an "egregious" violation of the discharge order."

In conclusion, the Plaintiff must demonstrate that any inaccurate report to credit agencies was made with the intention to collect the debt. As discussed herein, this usually requires the

-17-

denial of the creditor to remove any inaccurate information, and/or evidence of additional collection activity.

LEGAL STANDARD MOTION TO DISMISS

"The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of a complaint, not to weigh the evidence which the plaintiff offers or intends to offer." Velez-Arcay v. Banco Santander de P.R. (In re Velez-Arcay), 499 B.R. 225, 230 (Bankr. D.P.R. 2013), citing Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2nd Cir.1984); Citibank, N.A. v. K-H Corp., 745 F. Supp. 899, 902 (S.D.N.Y. 1990).

Fed. R. Civ. P. 8(a)(2), applicable to adversary proceedings through Fed. R. Bankr. P. 7008, mandates that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Although detailed factual allegations are not required, the Rule does call for sufficient factual matter". Surita-Acosta v. Reparto Saman Inc. (In re Surita-Acosta), 464 B.R. 86, 90 (Bankr. D.P.R. 2012). Therefore, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. The Twombly standard was further developed in Ashcroft v. Iqbal, 556 U.S. 622 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

In Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012), the U.S. Court of Appeals for the First Circuit (the "First Circuit") established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6).  Step one: isolate legal conclusions.  Step two: take the complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief.  Also see Pérez v. Rivera (In re Pérez), 2013 WL 1405747 at *3, 2013 Bankr. LEXIS 1561 at **9-10 (Bankr. D.P.R. 2013); Zavatsky v. O'Brien, 902 F. Supp. 2d 135, 140 (D. Mass. 2012); Guadalupe-Báez v. Pesquera, 2016 U.S. App. Lexis 7173, *7 (1st Cir. 2016).

This court in Hotel Airport, Inc. v. Best W. Int'l Inc. (In re Hotel Airport, Inc.), Nos. 11-2014 Bankr. LEXIS 3990, at *51-54 (Bankr. D.P.R. Sep. 18, 2014) held that the Court would not dismiss an adversary proceeding based solely on procedural grounds alone because that would elevate form over substance and increase the cost of litigation without benefitting either party. The Court's analysis was the following:

> "The U.S. Court of Appeals for the Third, Sixth, and Ninth Circuits have held that debtors complaining of discharge injunction violations may not proceed by adversary proceeding relying on Section 105. See Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert), 411 F.3d 452 (3rd Cir. 2005); Pertuso v. Ford Motor Credit Co., 233 F.3d 417 (6th Cir. 2000); Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186 (9th Cir. 2010); Cox v. Zale Delaware, Inc., 239 F.3d 910 (7th Cir. 2001); In re Laudani, 506 B.R. 19 (Bankr. D. Mass. 2014); Whitaker v. Bank of Am. (In re Whitaker), 2013 Bankr. LEXIS 2328, 2013 WL 2467932 (Bankr. E.D. Tenn. 2013); Tenczar v. Gable (In re Tenczar), 466 B.R. 32, 33 (Bankr. D. Mass. 2012).
>
> Notwithstanding, "the First Circuit ... ha[s] an established history of permitting aggrieved debtors to seek relief for alleged discharge violations through adversary proceedings." In re Alley, 2014 Bankr. LEXIS 2843 at **8-9, 2014 WL 2987656 at *2, citing Bessette v. Avco Fin. Services, Inc., 230 F.3d 439 (1st Cir. 2000); Collins v. Wealthbridge Mortg. Corp. (In re Collins), 474 B.R. 317, 319 (Bankr. D. Me. 2012) (considering a discharge injunction violation through an adversary proceeding); Canning v. Beneficial Maine, Inc. (In re Canning), 442 B.R. 165 (Bankr. D. Me. 2011), aff'd 462 B.R. 258 (B.A.P. 1st Cir. 2011), aff'd 706 F.3d 64 (1st Cir. 2013) (considering a discharge injunction violation through an adversary proceeding); Pratt v. Gen. Motors Acceptance Corp. (In re Pratt), 324 B.R. 1 (Bankr. D. Me. 2005), aff'd 2005 U.S. Dist. LEXIS 22274, 2005 WL 1961341 (D. Me. 2005), rev'd 462 F.3d 14 (1st Cir. 2006) (considering a discharge injunction violation through an adversary proceeding).

The court is aware that in <u>In re Tenczar</u>, the court *sua sponte* dismissed without prejudice an adversary proceeding complaint for violation of the discharge injunction determining that "actions to enforce the discharge injunction and to seek sanctions on account of discharge injunction violations must be brought as contested matters and not by way of adversary proceedings". 466 B.R. at 36 and 39. The <u>Tenczar</u> court reasoned that the Bankruptcy Rules distinguish "contested matters" from "adversary proceedings, the latter governed by Part VII of the Bankruptcy Rules and commenced by filing a complaint with the court." 466 B.R. at 37, fn.4, citing Fed. R. Bankr. P. 7003. Conversely, Fed R. Bankr. P. 7001 provides an exhaustive list of those proceedings deemed "adversary proceedings" and "contempt proceedings" are not included among them. Hence, the court found that because Fed. R. Bankr. P. 9014 governs the contempt proceedings, discharge injunction violations must be considered as a contested matter under Fed. R. Bankr. P. 9014. See id. at 37.

Notwithstanding, in <u>In re Alley</u>, 2014 Bankr. LEXIS 2843 at *12, 2014 WL 2987656 at *3, the court adopted and followed the reasoning established in <u>Motichko v. Premium Asset Recovery Corp. (In re Motichko)</u>, 395 B.R. 25, 33 (Bankr. N.D. Oh. 2008):

To dismiss on procedural grounds alone would be to elevate form over substance. This is particularly true where —as here— an adversary proceeding provides more procedural protection for the defendant than does a contested matter brought by way of motion. Given that this court has the discretion to require the more structured discovery process of an adversary proceeding in a contested matter, the court sees no reason to require Debtors to dismiss this adversary proceeding and refile it as a contested motion. Such unnecessary "hoop jumping" would merely serve to increase the costs of litigation, without providing any real benefit to either party. (Citations and footnotes omitted.)

The <u>Alley</u> court explained that "[t]he discharge injunction is entirely a creature of statute, created by Congress and not by judges. The injunction is the same for any debtor filing under the same Chapter, and is enforceable by any court with jurisdiction over the bankruptcy case and the parties. Thus, the sanctions issued in response to a § 524 violation constitute broader equitable relief referred to in §105, which may explicitly be sought in an adversary proceeding under [Fed. R. Bankr. P.] 7001(7)." 2014 Bankr. LEXIS 2843 at *11, 2014 WL 2987656 at *3. This court follows and adopts such reasoning. Hence, the court will not dismiss the instant adversary proceeding on those grounds."

<u>Hotel Airport, Inc. v. Best W. Int'l Inc. (In re Hotel Airport, Inc.)</u>, 2014 Bankr. LEXIS 3990, at *51-54.

Therefore, Berrios' Motion to Dismiss fails the Rule 12(b)(6) standard. As noted by the Plaintiff, this court has already determined, in <u>Hotel Airport, Inc. v. Best W. Int'l Inc. (In re Hotel Airport, Inc.)</u>, Nos. 11-06620 (ESL), 13-00259 (ESL), 2014 Bankr. LEXIS 3990 (Bankr. D.P.R. Sep. 18, 2014), that violations of a discharge order may be brought through an adversary proceeding, which is Defendant's principal argument seeking dismissal.

<u>MOTION TO AMEND COMPLAINT FOR DISCHARGE VIOLATION</u>

Debtor/Plaintiff moves the court to file an amended complaint pursuant to Fed. R. Civ. P. 15, made applicable to Bankruptcy Proceedings by Fed. R. Bankr. P. 7015, to add a class action under Fed. R. Civ. P. 23, made applicable to Bankruptcy Proceedings by Fed. R. Bankr. P. 23, because in its motion to dismiss "the Defendant alleges that its practice of continuing to collect discharged debts is part of the 'guidelines Berrios had established.'" Defendant Berrios opposes the request alleging that the court must first decide the motion to dismiss and that the proposed class action does not meet the requirements of Rule 23 for class certification.

Rule 15(a) provides for the amendment of pleadings to enable a party to assess matters that may have been overlooked or unknown. Bankruptcy courts have liberally allowed amendments. Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, <u>Federal practice and Procedure</u>, Vol. 6, §1472 and §1473. Rule 15(a)(2) provides that "The court should freely give leave [to amend a complaint] when justice so requires." The determination must be made considering the totality of the circumstances, including its timeliness. <u>Nikitine v. Wilmington Trust, Co.</u>, 715 F.3d 388, 390 (1st Cir. 2013); <u>Mulder v. Kohl's Department Stores, Inc.</u>, 865 F.3d 17 (1st Cir. 2017). Leave to amend a complaint may be denied for a variety of reasons, including futility, bad faith, undue delay, or dilatory tactics. <u>Privitera v. Curran</u>, 855 F.3d 19 (1st Cir. 2017). Leave to amend a complaint may be filed after a motion to dismiss is filed. <u>U.S. Ex Rel. D'Agostino v. EV3, Inc.</u>, 802 F.3d 188, 195 (1st Cir. 2015).

After considering the reasons and the timing leading the plaintiff to file a request for leave to amend the complaint to add a class action, that is, the statements in the initial motion to dismiss

filed by Berrios regarding its practice and guidelines, the court finds no improper purpose for the request.  Therefore, plaintiff's request for leave to amend the complaint is hereby granted.

Notwithstanding the above, the court is conscious of the decision in In re Golden, 630 B.R. 896 (Bankr. E.D. N.Y. 2021), and intends to follow its analysis regarding motions to strike class action allegations and class action certifications. The granting of leave to file the amended complaint to add a class action does not mean that the allegations cannot be questioned and that the class certification may be opposed.

DAMAGES FOR VIOLATION OF DISCHARGE INJUNCTION

The court may award damages resulting from a willful violation of the discharge injunction.  However, the award of damages for violation of the discharge injunction, as in the case of a violation of the automatic stay, must be founded on concrete, nonspeculative evidence and cannot be based on mere speculation, guess or conjecture.  A damage award for emotional distress is generally nominal when the behavior is associated with transmission of collection correspondence. In re Defeo, 635 B.R. 253 (Bankr. D.S.C. 2022). Subjective feelings are not *per se* sufficient.  The emotional harm must be significant.  "fleeting or trivial anxiety or distress is not sufficient." In re Todt, 567 B.R. 667, 681 (Bankr. D.N.H. 2017).

AWARD OF ATTORNEY'S FEES

Generally, the application of the American Rule calls for each party to bear their own litigation costs. There are exceptions to the American Rule in fee shifting statutes and for the willful violation of court orders. However, there is no statutory provision for the award of attorney's fees for a violation of the discharge injunction under 11 U.S.C. § 524. Such an award is subject to the court's discretion.  In re Hazelton, 622 B.R. 354 (Bankr. W.D. Wis. 2020); In re Mejia, 2019 WL 4915483 (Bankr. Maryland 2019). Debtors have a duty to mitigate damages when faced with violations of the discharge injunction, and must establish that any attorney fees requested are reasonable. 11 U.S.C.A. § 524(a)(2). In re Haltermon, 592 B.R. 311, 323 -324 (Bankr. S.D. Ohio 2018).

CONCLUSIONS AND ORDER

In view of the foregoing, the motion to dismiss filed by Berrios, as amended, is hereby denied, and plaintiff's motion to amend the complaint is hereby granted.

The parties are hereby granted sixty (60) days to conclude discovery.

A pretrial on the amended complaint is scheduled for December 9, 2022, at 10:00 AM.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 12th day of August 2022.

Enrique S. Lamoutte
United States Bankruptcy Judge

-23-